FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING
OCT 19 2026
2:03 pm
Margaret Botkins, Clerk
Cheyenne

**Martin Akandawen, Pro Se**
1304 East Gibbon St
Laramie, Wyoming, 82072
Telephone: 3077612496
Email: martinakandawen@gmail.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| **MARTIN AKANDAWEN,**<br><br>Plaintiff,<br><br>v.<br><br>**THE TRUSTEES OF THE UNIVERSITY OF WYOMING, a body corporate,**<br><br>Defendant. | Case No. 26-CV-320-K<br><br>**COMPLAINT FOR RETALIATION UNDER TITLE VI OF THE CIVIL RIGHTS ACT OF 1964**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Martin Akandawen, proceeding pro se, brings this Complaint against Defendant The Trustees of the University of Wyoming and alleges as follows:

## NATURE OF THE ACTION

1. This action challenges intentional retaliation by a federally funded public university against a graduate student who reported discrimination based on race and national origin and participated in the University's Equal Opportunity Report and Response (EORR) process.
2. Plaintiff reported in good faith that his former laboratory supervisor, Dr. Jason P. Gigley, had discriminated against him based on national origin. While that civil-rights matter was pending, Dr. Gigley removed Plaintiff from the authorship line of a research manuscript and removed Plaintiff's documented contribution credit from the manuscript's contributor statement.
3. The June 30, 2023 version of the preprint identified Plaintiff as an author and expressly stated that "M.A." performed experiments and conducted data analysis. The October 2,

2024 version retained the other five authors but omitted Plaintiff and deleted "M.A." from those same contribution sentences.

4. The removal deprived Plaintiff of attribution for his research work and impaired the accuracy and value of the academic record he used in graduate-school and employment applications. Plaintiff seeks declaratory and equitable relief, recoverable economic damages, nominal damages to the extent permitted by law, and costs and fees.

**PARTIES**

5. Plaintiff Martin Akandawen is a Black person of Ghanaian national origin. At all relevant times, he was a graduate student participating in the University of Wyoming's Molecular and Cellular Life Science research and educational programs in Laramie, Wyoming.
6. Defendant The Trustees of the University of Wyoming is the body corporate established by Wyo. Stat. Ann. § 21-17-203 and operates and governs the University of Wyoming, a public university located in Laramie, Wyoming.
7. Defendant receives federal financial assistance. The research article at issue itself identifies National Institutes of Health funding, and the University's programs and activities receive other federal financial assistance. Defendant is therefore subject to Title VI on an institution-wide basis. See 42 U.S.C. §§ 2000d and 2000d-4a.

**JURISDICTION AND VENUE**

8. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.
9. Congress has expressly provided that a State and its instrumentalities are not immune under the Eleventh Amendment from suit in federal court for a violation of Title VI. 42 U.S.C. § 2000d-7(a)(1).

10. This Court may grant declaratory relief under 28 U.S.C. §§ 2201 and 2202 and further equitable relief under Title VI and the Court's inherent equitable authority.

11. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2) because Defendant resides in this District and a substantial part of the events or omissions giving rise to this claim occurred in Laramie, Albany County, Wyoming.

## FACTUAL ALLEGATIONS

12. Dr. Jason P. Gigley was a University of Wyoming professor in the Department of Molecular Biology and Plaintiff's former laboratory research supervisor. He exercised University-conferred authority over the laboratory research, manuscripts, and authorship decisions at issue and acted within the scope of that authority.

13. On March 29, 2023, Plaintiff prepared or carried out a written validation protocol titled "Validation of CD4 CRE ERT2 TfR flox/flox." The protocol identified Dr. Gigley as principal investigator and Plaintiff as investigator.

14. The validation work required tamoxifen or vehicle treatment of mice, spleen harvesting, purification of CD4 cells, RNA extraction, reverse transcription, and RT-qPCR analysis of transferrin-receptor expression. This work tested whether the conditional Cre-lox gene-deletion system functioned as intended, a necessary validation issue for interpreting the research.

15. Plaintiff also alleges that he bred and genotyped mice used in the project, maintained fibroblast cultures when the lead author was away, performed experiments and data analysis that generated Supplementary Figure 4, and contributed to manuscript revisions and edits.

16. On June 30, 2023, the laboratory posted to bioRxiv a preprint titled "Transferrin Receptor is Required for CD4+ T Cell Iron-Dependent Response During Acute Toxoplasma gondii Infection." The authors were Stephen L. Denton, Tathagato Roy, Martin Akandawen, Hunter K. Keplinger, Sai K. Ng, and Jason P. Gigley.

17. The June 2023 contributor statement represented that experiments were performed by "S.L.D., T.R., M.A., H.K.K., and S.K.N.," that data analysis was conducted by "S.L.D., T.R., and M.A.," and that all authors contributed to revisions.

18. The June 2023 preprint therefore publicly documented that Plaintiff performed experiments, analyzed data, contributed to revisions, and was an author of the research.

19. In approximately February 2024, Plaintiff accepted an invitation from the EORR based of a report relayed to the EORR by the Head of Molecular Biology department and the Dean of Graduate studies on intentional racial derogation by Dr. Gigley based on Plaintiff's Ghanaian national origin and race, and Plaintiff participated in the University's civil-rights grievance process.

20. University documents sometimes called that proceeding a "Title IX process." Its substance, however, included Plaintiff's report of national-origin and race discrimination. The University's May 26, 2026 appeal review expressly described the underlying matter as Plaintiff's report of "discrimination based on national origin against Dr. Jason Gigley."

21. Dr. Gigley was the respondent in the underlying EORR matter and knew of Plaintiff's protected report and participation.

22. The underlying discrimination matter remained under investigation until it was closed on September 19, 2025.

23. While that matter was active, a revised version of the preprint was posted to bioRxiv on October 2, 2024.

24. The October 2024 author line retained Denton, Roy, Keplinger, Ng, and Gigley but omitted Plaintiff. Plaintiff was the only author from the June 2023 author line who was removed.

25. The October 2024 contributor statement materially repeated the June 2023 statement but deleted "M.A." from the list of persons who performed experiments and from the list of persons who conducted data analysis. It continued to state that all listed authors contributed to revisions.

26. Plaintiff was not notified of the removal before the revised preprint was posted and was not given a meaningful opportunity to address the authorship decision through a neutral process. He learned of the removal later.

27. During the period when Plaintiff did not know his name had been removed, he listed the preprint in support of graduate-school and employment applications. The undisclosed alteration exposed him to having an apparently inconsistent publication record and impaired the professional value of the work he performed.

28. Authorship and documented research credit are material educational and professional benefits for a graduate student. Removing that credit had the capacity to dissuade a reasonable graduate student from reporting or supporting a discrimination complaint.

29. Plaintiff has suffered loss of authorship attribution, loss of the professional and academic value of his work, impairment of his application materials and research record, and pecuniary and other legally recoverable harm in an amount to be established through discovery and at trial.

30. On February 17, 2026, Plaintiff reported the retaliatory authorship removal to EORR. EORR assigned Case No. 2025236801.

31. On April 2, 2026, EORR dismissed the retaliation allegation after accepting Dr. Gigley's statement that the June 2023 draft originally listed everyone in the laboratory, even persons who had contributed nothing, and that Plaintiff initially appeared as an author merely because he attended meetings and asked questions.

32. The same dismissal letter reported Dr. Gigley's separate assertion that authorship depended on contributing a figure, performing an experiment used to generate a figure, or analyzing data for a figure. That asserted criterion was inconsistent with his claim that Plaintiff produced no relevant data and with the June 2023 contributor statement crediting "M.A." with performing experiments and analyzing data.

33. Plaintiff appealed on April 10, 2026 and submitted the validation protocol, emails, manuscript-editing evidence, and additional information describing his experimental and analytical contributions.

34. A written appeal review dated May 26, 2026 concluded that the reviewer lacked sufficient information to determine whether the omitted evidence would have changed the result and recommended remand so EORR could consider the additional evidence, the inconsistent authorship explanations, the timing, and whether other laboratory members remained authors.

35. After remand, EORR consulted Associate Professor William David Todd, who characterized Plaintiff's validation work as technical "quality control" and not authorship-level intellectual contribution. EORR again dismissed the matter by letter dated August 5, 2026.

36. Whether a consultant later viewed one part of Plaintiff's work as technical does not resolve why Plaintiff was credited as an author and as an experimenter and data analyst in June 2023, but was singled out for deletion while his protected complaint against the decisionmaker was pending.

37. In its final decision, EORR did not reconcile Dr. Gigley's inconsistent explanations with the contemporaneous June 2023 contributor statement; did not explain why the only removed author was the person pursuing the discrimination complaint; and did not determine when, by whom, or under what consistently applied standard the challenged removal decision was made.

38. Through Dr. Gigley and EORR officials with authority to investigate and correct retaliation, Defendant had actual notice of the protected activity, the authorship removal, and the contradictory evidence. Defendant declined to correct the adverse action and treated it as valid.

39. The causal connection between Plaintiff's protected activity and his removal is supported by, among other facts, Dr. Gigley's knowledge; the pendency of the civil-rights process when the revised manuscript appeared; Plaintiff's unique removal while all other authors remained; the simultaneous deletion of the contemporaneous contributor credit for Plaintiff's experiments and data analysis; and the shifting or inconsistent explanations offered for the removal.

40. On information and belief, but for Plaintiff's report of and participation in the national-origin and race derogation matter, Defendant would not have removed Plaintiff from the manuscript and erased his documented research contributions.

## COUNT I - RETALIATION IN VIOLATION OF TITLE VI

41. Plaintiff incorporates the preceding allegations as though fully set forth here.

42. Plaintiff engaged in activity protected by Title VI when he opposed and reported derogation based on national origin and race and participated in EORR's review of that report.

43. Defendant knew of Plaintiff's protected activity because Dr. Gigley was the respondent in the underlying matter and EORR administered the matter for the University.

44. Removing Plaintiff's authorship and contributor credit was materially adverse because it negatively affected, and had the potential to negatively affect, Plaintiff's education, research record, graduate-school applications, employment applications, and professional opportunities, and because it could deter a reasonable student from pursuing a discrimination complaint.

45. The circumstances alleged above plausibly connect the removal to a retaliatory motive and show that Plaintiff's protected activity was a but-for cause of the removal.

46. Retaliation is an intentional act. Defendant, through its authorized personnel, intentionally subjected Plaintiff to materially adverse treatment because he opposed conduct prohibited by Title VI and participated in the University's civil-rights process.

47. Defendant's conduct violated Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., and caused Plaintiff legally cognizable injury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and:

48. Declare that Defendant retaliated against Plaintiff in violation of Title VI;

49. Enter preliminary and permanent injunctive relief prohibiting further retaliation against Plaintiff;

50. Order appropriate equitable relief restoring Plaintiff's authorship and contribution credit or, alternatively, require an independent, nonretaliatory authorship review under consistently applied standards and appropriate corrective communications;

51. Order correction of University-controlled records that inaccurately omit Plaintiff's documented research contributions and preservation of records relevant to the authorship decision and EORR proceedings;

52. Award Plaintiff actual compensatory damages for proven pecuniary and economic losses in an amount determined at trial;

53. Award nominal damages to the extent permitted by law if no compensatory damages are proven;

54. Award pre- and post-judgment interest as permitted by law;

55. Award reasonable litigation costs and, if counsel appears, attorney's fees under 42 U.S.C. § 1988(b); and

56. Award such other legal or equitable relief as the Court deems just and proper.

*Plaintiff does not seek punitive damages or damages solely for emotional distress under Title VI.*

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 12, 2026

Respectfully submitted,

**Martin Akandawen, Plaintiff, Pro Se**
1304 East Gibbon St, Laramie, Wyoming, 82072
Telephone: 3077612496 | Email: martinakandawen@gmail.com

## 23-00441-FL Approved MS Receive

Summarize

I

infoji@aai.org

To: Martin Akandawen

Thu 6/29/2023 2:03 PM

◆ This message was sent from a non-UWYO address. Please exercise caution when clicking links or opening attachments from external sources.

CC: Dr. Gigley

Dear Dr. Akandawen:

This e-mail is to notify you that you are listed as a co-author on a manuscript, titled "Transferrin Receptor 1 is Required for CD4+ T Cell Iron-Dependent Response During Acute Toxoplasma gondii Infection," submitted by Dr. Gigley for consideration for publication in The Journal of Immunology. The manuscript has been assigned the manuscript identification number 23-00441-FL.

Currently, our records indicate that there is no ORCID associated with your account. ORCID stands for "Open Researcher and Contributor ID (Identification)". It is a unique number used by researchers to unambiguously assign published work to the correct person. More information about it can be found here: http://orcid.org/

Please click the link below if you wish to provide an ORCID:
https://ji.msubmit.net/cgi-bin/main.plex?el=A3CJ3diz6A1Bnxx7Bh4B9ftdhmdjSbYlTKTe45aOiRrligZ

**23-00441-FL Approved MS Receive** Summarize

Currently, our records indicate that there is no ORCID associated with your account. ORCID stands for "Open Researcher and Contributor ID (Identification)". It is a unique number used by researchers to unambiguously assign published work to the correct person. More information about it can be found here: http://orcid.org/

Please click the link below if you wish to provide an ORCID:
https://ji.msubmit.net/cgi-bin/main.plex?el=A3CJ3diz6A1Bnxx7Bh4B9ftdhmdjSbYlTKTe45aOiRrligZ

Please note that the link to the ORCID account will cease to function if the manuscript is accepted. Please use the link now if you wish to update or add your ORCID number.

Regards,

Journal Staff
*The Journal of Immunology*

What is the message? | Hey there! | Thank you!

Reply Forward

bioRxiv preprint doi: https://doi.org/10.1101/2023.06.28.546960; this version posted June 30, 2023. The copyright holder for this preprint (which was not certified by peer review) is the author/funder. All rights reserved. No reuse allowed without permission.

The principal investigator and corresponding author of this project is J.P.G. Project conception was conducted by S.L.D. and J.P.G. Experiments were designed by S.L.D. and performed by S.L.D., T.R., M.A., H.K.K., and S.K.N. Data analysis was conducted by S.L.D., T.R., and M.A. Intellectual contributions were made by S.L.D. and J.P.G. Technical expertise was provided by J.P.G. Manuscript preparation was performed by S.L.D. and J.P.G., with contributions by all authors on revisions. Funding securement and project management was performed by J.P.G.

## References

1. Pappas, G., N. Roussos, and M. E. Falagas. 2009. Toxoplasmosis snapshots: global status of Toxoplasma gondii seroprevalence and implications for pregnancy and congenital toxoplasmosis. *International journal for parasitology* 39: 1385-1394.
2. Luft, B. J., and J. S. Remington. 1988. AIDS commentary. Toxoplasmic encephalitis. *The Journal of infectious diseases* 157: 1-6.
3. Tenter, A. M., A. R. Heckeroth, and L. M. Weiss. 2000. Toxoplasma gondii: from animals to humans. *International journal for parasitology* 30: 1217-1258.
4. Fox, B. A., J. P. Gigley, and D. J. Bzik. 2004. Toxoplasma gondii lacks the enzymes required for de novo arginine biosynthesis and arginine starvation triggers cyst formation. *International journal for parasitology* 34: 323-331.
5. Krug, E. C., J. J. Marr, and R. L. Berens. 1989. Purine metabolism in Toxoplasma gondii. *J Biol Chem* 264: 10601-10607.
6. Romano, J. D., S. Sonda, E. Bergbower, M. E. Smith, and I. Coppens. 2013. Toxoplasma gondii salvages sphingolipids from the host Golgi through the

bioRxiv preprint doi: https://doi.org/10.1101/2023.06.28.546960; this version posted October 2, 2024. The copyright holder for this preprint (which was not certified by peer review) is the author/funder. All rights reserved. No reuse allowed without permission.

The principal investigator and corresponding author of this project is J.P.G. Project conception was conducted by S.L.D. and J.P.G. Experiments were designed by S.L.D. and performed by S.L.D., T.R., H.K.K., and S.K.N. Data analysis was conducted by S.L.D., and T.R. Intellectual contributions were made by S.L.D. and J.P.G. Technical expertise was provided by J.P.G. Manuscript preparation was performed by S.L.D. and J.P.G., with contributions by all authors on revisions. Funding securement and project management was performed by J.P.G.

## References

1. Pappas, G., N. Roussos, and M. E. Falagas. 2009. Toxoplasmosis snapshots: global status of Toxoplasma gondii seroprevalence and implications for pregnancy and congenital toxoplasmosis. *International journal for parasitology* 39: 1385-1394.
2. Luft, B. J., and J. S. Remington. 1988. AIDS commentary. Toxoplasmic encephalitis. *The Journal of infectious diseases* 157: 1-6.
3. Tenter, A. M., A. R. Heckeroth, and L. M. Weiss. 2000. Toxoplasma gondii: from animals to humans. *International journal for parasitology* 30: 1217-1258.
4. Fox, B. A., J. P. Gigley, and D. J. Bzik. 2004. Toxoplasma gondii lacks the enzymes required for de novo arginine biosynthesis and arginine starvation triggers cyst formation. *International journal for parasitology* 34: 323-331.
5. Krug, E. C., J. J. Marr, and R. L. Berens. 1989. Purine metabolism in Toxoplasma gondii. *J Biol Chem* 264: 10601-10607.
6. Romano, J. D., S. Sonda, E. Bergbower, M. E. Smith, and I. Coppens. 2013. Toxoplasma gondii salvages sphingolipids from the host Golgi through the

RECEIVED
OCT 19 2026
CLERK, U.S.D.C.
CHEYENNE, WYOMING

**Subject:** New Pro Se Civil Case – Martin Akandawen v. University of Wyoming

Dear Clerk of Court:

Please accept the attached documents for filing as a new pro se civil action in the United States District Court for the District of Wyoming:

1. Signed Civil Complaint
2. Proposed Summons
3. Any exhibits, if applicable

Please confirm receipt and advise me of the assigned case number, the filing-fee payment procedure, and whether any additional documents are required.

Sincerely,

Martin Akandawen

1304 East Gibbon St, Apt 3,
Laramie, WY, 82072

Telephone: 3077612496
Email: martinakandawen@gmail.com

RECEIVED
OCT 19 2026
CLERK, U.S.D.C.
CHEYENNE, WYOMING

Dear Clerk of Court,

**Request for Instructions on Paying Civil Filing Fee**

I am preparing to file a pro se civil action in the United States District Court for the District of Wyoming, captioned *Martin Akandawen v. The Trustees of the University of Wyoming*. A civil action number has not yet been assigned.

Please provide instructions for paying the civil filing fee. I would appreciate confirmation of:

1. The current filing-fee amount;
2. The accepted methods of payment; and

Please also let me know whether any payment form or identifying information should accompany the filing.

Thank you for your assistance.

Respectfully,

Martin Akandawen
Pro Se Plaintiff
1304 East Gibbon St, Apt 3, Laramie, WY, 82072
3077612496
martinakandawen@gmail.com

New Pro Se Civil Case Filing

FROM:

Martin Akandawen
1304 East Gibbon St Apt 3
Laramie, WY, 82072

UNITED STATES POSTAL SERVICE. Retail

P

US POSTAGE PAID
$11.50
Origin: 82072
10/16/26
5753960489-03

PRIORITY MAIL®

0 Lb 4.80 Oz
RDC 01

EXPECTED DELIVERY DAY: 10/19/26

C015

SHIP TO:
STE 2131
2120 CAPITOL AVE
CHEYENNE WY 82001-3658

USPS TRACKING® #

9505 5110 5898 6289 6358 78

TO:

Clerk of Court
United State District Court
2120 Capital Avenue, Room 2131
Cheyenne, WY 82001-3658

Ready Post